IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **INVUE SECURITY PRODUCTS INC.**, <br><br>  Plaintiff, <br><br> v. <br><br> **MOBILE TECH, INC.**, <br><br>  Defendant, | Case No. 3:19-cv-407-SI <br><br> **OPINION AND ORDER** |

Scott E. Davis, John D. Vandenberg, and Kristin L. Cleveland, Klarquist Sparkman LLP, 121 SW Salmon Street, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

Alan H. Norman, David B. Jinkins, Steven E. Garlock, and Matthew A. Braunel, Thomas Coburn LLP, One US Bank Plaza, St Louis, MO 63101; Brenna K. Legaard, Schwabe, Williamson & Wyatt, 1211 SW Fifth Ave., Suite 1900, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff InVue Security Products Inc. ("InVue" or "Plaintiff") brings this action against Mobile Tech, Inc. ("MTI" or "Defendant"). InVue alleges that MTI manufactured and sold products and components of products that infringed upon InVue's valid patents and seeks enhanced damages. Before the Court is Defendant's motion to dismiss all claims. For the following reasons, the Court DENIES Defendant's motion.

## STANDARDS

In patent cases, a district court applies the law of the regional circuit (rather than that of the Federal Circuit) to procedural questions such as whether to grant a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *C&F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000). In the Ninth Circuit, a motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). When evaluating the sufficiency of a complaint's factual allegations, the Court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In patent infringement cases, this amounts to "facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

PAGE 2 – OPINION AND ORDER

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted). If a complaint fails to state a claim, the court should grant leave to amend unless it is clear that the complaint's deficiencies are incurable. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995).

## BACKGROUND

InVue and MTI compete in the manufacture and sale of retail merchandise security systems. InVue brings this action to recover on claims of alleged direct patent infringement, contributory infringement, and induced infringement. InVue seeks injunctive relief, monetary damages, and enhanced damages for willful infringement.

The two patents-in-suit are U.S. Patent No. 9,830,787 (the '787 patent) and U.S. Patent No. 10,055,954 (the '954 patent). The '954 patent is a continuation of the application that issued as the '787 patent. Both patents are entitled "Merchandise Security System Including Retractable Alarming Power Cord." Three elements comprise the patents-in-suit: (1) a continuous alarming power cord with at least one electrical conductor; (2) a reel and housing for receiving and storing at least a portion of the alarming power cord; and (3) circuity that monitors the electrical signal running through the alarming power cord for interruptions. One end of the alarming power cord attaches to the reel, and the other end attaches to merchandise. Removing the merchandise interrupts the electrical signal running through the power cord. The monitoring circuitry detects the interruption and can trigger an alarm.

# DISCUSSION

## A. Direct Infringement Claims

Any party who "makes, uses offers to sell, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent therefor" without permission commits direct patent infringement. 35 U.S.C § 271. A complaint need only put the "potential infringer . . . on notice of what activity . . . is being accused of infringement." *Nalco v. Chem-Mod LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quotation marks omitted).

In its First Amended Complaint ("FAC"), InVue alleges that MTI directly infringed on both the '787 patent and the '954 patent. InVue defines the category of MTI's products the sale of which directly infringes on InVue's patents as the "Accused Products." *See* FAC ¶ 16. It lists examples of the Accused Products, including the "Round Freedom Micro," the "Freedom Micro" (FAC ¶ 18), and the "Freedom Micro DI" (FAC ¶ 19). InVue also includes the "AirTether" in the category of Accused Products. *See* FAC ¶ 20.[1] The complaint later states that "MTI's manufacture, offer for sale, sale, importation, and/or use of the Accused Products in the United States" directly infringes the '787 and '954 patents. *See* FAC ¶ 25. This caused some confusion about whether AirTether by itself directly infringed on the patents-in-suit.

In its response, InVue insists that it is "not asserting that the AirTether, standing alone, infringes the patents-in-suit." ECF 24 at 12. It is clear from InVue's response that AirTether is only a component of other allegedly infringing products, not an independently directly infringing

---

[1]At oral argument, InVue clarified that AirTether's inclusion in the category of Accused Products in the FAC was an error resulting from inartful drafting. InVue's counsel proposed amending FAC ¶ 20 to read: "An exemplar of a component part of one of MTI's Accused Products, the AirTether, is shown in FIGS. 6 and 7 below." The Court accepts that oral motion to amend and considers the FAC so amended.

product. MTI also admits as much. *See* ECF 33 at 3. Moreover, at oral argument InVue's counsel confirmed that it does not assert that AirTether by itself directly infringes on the patents-in-suit. Thus, despite the confusing original text of the FAC, MTI has fair notice as to what they must defend. InVue has sufficiently pleaded claims of direct infringement.

**B. Indirect Infringement Claims**

InVue also alleges indirect infringement of the patents-in-suit. A claim of indirect patent infringement cannot succeed without an antecedent claim of direct patent infringement. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). There are two types of indirect infringement—contributory infringement and induced infringement. InVue alleges both. The two forms share a common requirement: knowledge of the patent-in-suit by the alleged infringer. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011).

  **1. Knowledge of the Patent-in-Suit**

    **a. Post-suit or Pre-suit Knowledge**

InVue and MTI disagree about whether post-suit knowledge of the patents-in-suit is enough to satisfy the knowledge requirement. MTI argues that InVue must plead that MTI had pre-suit knowledge of the patents-in-suit. InVue argues that it needs only plead that MTI had post-suit knowledge. Both parties agree that MTI had post-suit knowledge of the patents-in-suit based on InVue's complaint. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012) (finding that defendant's post-suit knowledge can be inferred from filing of the suit). InVue alternatively argues that even if indirect infringement requires pre-suit knowledge of the patent-in-suit, it has pleaded sufficient facts showing MTI's pre-suit knowledge to survive a Rule 12(b)(6) motion. Both parties cite several district court cases in support of their arguments. From the Court's perspective, these cases all stand for the

same thing: a party that pleads only post-litigation knowledge can recover damages only for post-suit conduct.

In a case cited by MTI, the court was "convinced that knowledge after filing of the present action is not sufficient for pleading the requisite knowledge of indirect infringement." *Everlight Elecs. Co. v. Bridgelux, Inc.*, 2018 WL 5606487, at *3 (N.D. Cal. Sept. 14, 2018) (citation omitted) (quotation marks omitted). But the same court found that "a defendant's knowledge of a patent at the time of the suit's commencement can satisfy the knowledge requirement for conduct that post-dates the date of the complaint." *Id.* The court therefore granted the Rule 12(b)(6) motion relating to parts of the claims alleging pre-suit conduct but denied the motion relating to parts of the claim alleging post-suit conduct. The in-circuit district court case that InVue cites further supports this distinction. *See Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*, 2017 WL 5634131, at *11 (W.D. Wash. Nov. 21, 2017) (assuring defendants that "post-suit knowledge would not…support liability for pre-suit acts committed without any knowledge"). InVue also cites two out-of-circuit cases to argue that pre-suit and post-suit claims are not separable at the motion to dismiss stage. *See* ECF 24 at 16. The court in *Apeldyn Corp. v. Sony Corp.* did not dismiss claims when the plaintiff did not plead the defendant's pre-suit knowledge—but it did acknowledge that its approach was inconsistent with previous decisions in the same district. 852 F. Supp. 2d 568, 574 n.8 (D. Del. 2012) (citation omitted). Still, Plaintiff does not address the practical problem that it could not recover damages for pre-suit conduct, nor does it deal with the in-circuit cases treating pre-suit and post-suit claims as separable at this stage. *See Everlight Elecs.*, 2018 WL 5606487, at *3; *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) (acknowledging the split in authority but holding that "a defendant can not [sic] be held liable because it induced or

contributed to another's acts *before* the defendant had knowledge" (emphasis in original)). Thus, the court finds that InVue must allege pre-suit knowledge of the patents-in-suit to survive MTI's motion to dismiss.

### b. InVue's Allegations of MTI's Pre-suit Knowledge

The Court now turns to whether InVue has alleged sufficient pre-suit knowledge of the patents-in-suit. InVue asks the Court to infer—but does not directly allege—that MTI was monitoring InVue's patents and patent applications. The substance of a complaint, however, is its factual allegations, not what it implies. The Court need not take as true InVue's suggestion that MTI was monitoring their patent portfolio and applications. Instead, it is proper to consider only the specific factual allegations underlying that implication in determining whether InVue has adequately plead pre-suit knowledge. InVue includes three specific factual allegations from which the Court might infer that MTI knew about the patents-in-suit: (1) InVue and MTI have been continuously involved in multiple lawsuits asserting patent infringement involving retail security systems since at least December 15, 2015, (2) InVue and MTI are involved in ongoing post-grant proceedings before the United States Patent and Trademark Office, and (3) InVue and MTI are competitors in the same industry.

Competition alone is not enough to infer pre-suit knowledge of the patents-in-suit. *See Radware, Ltd. v. A10 Networks, Inc.*, 2013 WL 5373305, at *3 (N.D. Cal. Sept. 24, 2013) (noting that the defendant's status as one of plaintiff's competitors does not imply that they were monitoring plaintiff's patent applications). Nor does knowledge of other similar patents necessarily imply actual knowledge of the patent-in-suit. *See id.*, citing *Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012 WL 1831543 (N.D. Cal. May 18, 2012). And knowledge of "a patent application does not provide notice of the resulting patent for indirect…infringement." *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018); *see*

PAGE 7 – OPINION AND ORDER

*also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (observing that "[a] 'patent pending' notice gives one no knowledge whatsoever"). This Court did, however, include "active[] monitor[ing] of the progress of Plaintiff's patent applications" in a list of factual allegations that considered together might lead the court to draw a reasonable inference of pre-suit knowledge. *Adidas Am., Inc*, 2017 WL 2543811 at *4. Finally, even if factual allegations considered separately would be inadequate to support an inference of pre-suit knowledge, "[t]aken in combination" they might reasonably support such an inference. *SoftView LLC v. Apple Inc.*, 2012 WL 3061027, at *6 (D. Del. July 26, 2012); *see also Dynatrace LLC*, 316 F. Supp. 3d at 1133 (dismissing claims where Plaintiff did not plead a "constellation of facts" adequate to support the inference of pre-suit knowledge).

Other courts found the following factual allegations *insufficient* to support an inference of pre-suit knowledge: a licensing agreement between the defendant and a third party referencing the patent-in-suit, *see EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527 (D. Del. 2011); competitor status combined with the assertion that the defendant monitored intellectual property in the industry, *see Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at *4 n.5 (N.D. Ill. Sept. 2, 2011), *Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018); competitor status combined with plaintiff's pending lawsuit against another competitor for infringement of the patent-in-suit, *see MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012); the combination of competitor status, letters not mentioning the patent-in-suit from plaintiff to three of defendant's predecessors-in-interest, a mutual non-disclosure agreement between plaintiff and one of Defendant's predecessors-in-interest, and knowledge of various of plaintiff's patent applications, *see Dynatrace LLC*, 316 F. Supp. 3d at 1133.

Courts found the following factual allegations *sufficient* to support an inference of pre-suit knowledge: a licensing agreement between plaintiff and defendant referencing the patent-in-suit, *see Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); defendant's membership in a defensive patent aggregation service where plaintiff had disclosed patents-in-suit to the service, *see Softview*, WL 3061027, at *6; the combination of defendant's subsidiary citing the published application of the patent-in-suit, defendant's connection with plaintiff's former employee involved in development of patent-in-suit, and defendant's relationship with exclusive seller of electronic device that used patent-in-suit, *see id.* at *5-6.

At this stage of the litigation, the motion to dismiss presents a close call. The parties do not cite (and the Court has not found) a case with the same "constellation of facts" that InVue pleads here. *Dynatrace*, F. Supp 3d at 1133. None of InVue's allegations would establish knowledge if considered independently. Previous litigation can only establish MTI's actual knowledge of the patents at issue in the existing suits—not for other similar patents that are not at issue. *See Vasudevan Software, Inc.*, 2012 WL 1831543 at*3. In a post-grant proceeding before the United States Patent and Trademark Office ("PTO"), a third party petitions to challenge a specific patent within nine months of issuance. 37 C.F.R. § 42.202. Involvement in post-grant PTO proceedings shows MTI's knowledge of the patent they petitioned against, but not other similar patents. Nor does MTI's competitor status suffice, although it does "make knowledge of the patent at issue more plausible." *Lippert Components* 2018 WL 345767, at *2 (quotation marks omitted).

In both cases when other courts found that plaintiffs had pleaded knowledge, there was some reference to the patent-in-suit. *See, e.g. Xpoint*, 730 F. Supp 2d at 357 (noting licensing agreement between plaintiff and defendant mentioning patent-in-suit), *Softview*, WL 3061027,

at *6 (noting defendant's connection with plaintiff's former employee who worked on patent-in-suit, defendant's subsidiary citing application for patent-in-suit, defendant's relationship with seller of product using patent-in-suit). Yet InVue's position is stronger than that of the plaintiffs in *Trading Tech*, *Lippert*, and *MONEC*. InVue alleges that the litigation has been "continuous"—the parties have been involved in ongoing litigation in multiple districts for almost four years. This ties MTI to InVue more closely than a licensing agreement between InVue and a third party, or an allegation that MTI monitored intellectual property in the industry generally. It also gives MTI fair notice—MTI knows to which lawsuits and post-grant proceedings InVue refers. On summary judgment, however, MTI may be able to show that those lawsuits had nothing at all to do with the patents-in-suit. But for the purposes of a Rule 12(b)(6) motion, InVue has pleaded a "constellation of facts" from which the Court may infer pre-suit knowledge. The Court now considers whether InVue has pleaded the additional elements required for contributory and indirect infringement.

### 2. Contributory Infringement

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c)). Plaintiffs must plead "facts that allow an inference that the components sold or offered for sale" cannot "be used for purposes *other than* infringement" to state a claim for contributory infringement. *In re Bill of Lading*, 681 F.3d at 1337-8 (emphasis in original). The components must have no non-infringing uses that are "not unusual, far-fetched, illusory,

impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327-29 (Fed. Cir. 2009) (defining the term "substantial" in U.S.C § 271(c)).

The '787 and '954 patents are both retail security systems. InVue alleges that the Accused Products are "configured only for the infringing use as merchandise security systems." FAC ¶ 39. This is the same thing as saying that the Accused Products have no non-infringing uses. InVue explains that the only use of the Accused Products is attachment to merchandise to prevent theft "using an electrical coupling of the reel and housing." *Id.* InVue describes *what* the Accused Products are configured to do and *how* they do it. These allegations go beyond merely reciting the elements of a contributory infringement claim and adequately support claims of contributory infringement.

### 3. Induced Infringement

The patent laws provide that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[A]ctive" inducement has three elements: knowledge of the patent; knowledge that the induced acts will infringe; and "intent to 'bring about the desired result,' which is infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011). Each requirement is separate and distinct. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("To survive [defendants'] motion to dismiss, therefore, [plaintiff's] amended complaints must contain facts plausibly showing that [defendants] specifically intended their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.").

PAGE 11 – OPINION AND ORDER

Specific intent to encourage infringement "can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Thus, that a product may be used in an infringing manner is not sufficient to establish intent. *See id.* at 1328-29. Nor is actual knowledge that some users of the product may be infringing the patent. *See id.* at 1329. Similarly, "ordinary acts incident to product distribution, such as offering customers technical support or product updates," will not support inducement liability by themselves. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 937 (2005). On the other hand, instructions that "teach an infringing use" of the product may be enough to infer "an affirmative intent to infringe the patent." *Vita-Mix Corp.*, 581 F.3d at 1329 n.2; *see also Metro-Goldwyn-Maye Studios*, 545 U.S. at 936 ("[e]vidence of 'active steps . . . taken to encourage direct infringement,' . . . such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe. . . .") (citation omitted); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1365 (Fed. Cir. 2012) (noting that the defendant must "go beyond describing the infringing mode" and "recommend[] that customers use the infringing mode" to be liable for induced infringement). What the patentee must allege is "culpable conduct, directed to encouraging another's infringement." *DSU Med. Corp.*, 471 F.3d at 1306.

InVue has alleged such culpable conduct. InVue alleges that the Accused Products are configured only for infringing use of the patents-in-suit. InVue also alleges that MTI instructed customers who bought the Accused Products on how to operate them in a manner than infringed upon the patents-in-suit—that is, how to set them up as retail security systems. In support of this allegation, InVue includes the "User Guide" that MTI provided to customers who bought the Round Freedom Micro, which is one of the Accused Products. Ex. C. The instructions outline

how to arm the security system, attach merchandise to the system, remove various parts of the system, and silence the security alarm. They also include a troubleshooting guide. The only purpose for providing these instructions is so that a reader can set up the product as a retail security system. They "teach [the] infringing use" of the patents-in-suit. *Vita-Mix Corp.*, 581 F.3d at 1329 n.2. InVue has sufficiently pleaded claims for induced infringement of the patents-in-suit.

**C. Enhanced Damages**

The Supreme Court stated the current standard for enhanced damages in *Halo*: "Section 284 of the Patent Act provides that, in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016) (quoting 35 U.S.C. § 284). "[T]here is no precise rule or formula for awarding damages under § 284." *Id.* at 1932 (quotation marks omitted). "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* Such damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior" and "are generally reserved for egregious cases of culpable behavior." *Id.*

Whether infringement is "willful" is a question of the infringer's subjective intent, the answer to which must be inferred from all the circumstances. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *see also Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) ("A determination of willfulness requires an assessment of a defendant's state of mind."). The subjective *Halo* test replaced the old *Seagate* test for enhanced damages, which required a finding of objective recklessness—the patentee needed to show that "the infringer

PAGE 13 – OPINION AND ORDER

acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and that "the risk of infringement was either known or so obvious that it should have been known to the accuser." *Halo*, 136 S. Ct. at 1930 (quoting *In re Seagate Technology*, LLC, 397 F.3d 1360, 1371 (Fed. Cir. 2007). In *Halo*, the Court acknowledged that the *Seagate* test was both underinclusive (infringement that is not objectively reckless might nonetheless be subjectively willful) and overinclusive (even in cases of "egregious misconduct," the decision to award enhanced damages is an "exercise in discretion"). *Halo*, 136 S. Ct. at 1933.

InVue alleges that MTI's direct and indirect infringement of the '787 and '954 patent is willful because "it continues despite an objectively high likelihood that MTI's conduct infringes valid claims of the ['787 and '954] patents, and this likelihood is either known to MTI or so obvious that MTI should have know that its conduct infringed valid claims of the ['787 and '954] patents." InVue refers to the elements of the old *Seagate* standard, not the new standard announced in *Halo*. InVue states no additional factual allegations other than those three it gave as a basis for inferring pre-suit knowledge but still argues that it has pleaded facts from which the Court might infer that MTI infringed with "conscious disregard" of InVue's patent rights. Despite these potential deficiencies—*Halo* displaced *Seagate* and the law is clear that willfulness requires more than just knowledge—MTI has not pointed to any case in which a court dismissed an enhanced damages claim at this early stage of litigation. Thus, InVue has pleaded enough for the enhanced damages claim to survive MTI's motion to dismiss.

## CONCLUSION

Defendant's motion to dismiss (ECF 23) is DENIED.

**IT IS SO ORDERED**.

DATED this 18th day of October, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge